IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **ALONA BRANK**, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>**MED1CARE HOME HEALTH LLC**,<br><br>Defendant. | Case No. 3:22-cv-00384<br><br>Judge Jack Zouhary |

### JOINT MOTION FOR FINAL APPROVAL OF FLSA SETTLEMENT AND PRELIMINARY APPROVAL OF RULE 23 CLASS ACTION SETTLEMENT

Representative Plaintiff Alona Brank ("Representative Plaintiff") and Defendant Med1Care Home Health LLC ("Defendant") (collectively, the "Parties") respectfully request that this Honorable Court:

1. Give final approval of the Parties' settlement of the collective claims brought pursuant to the Fair Labor Standards Act ("FLSA") as reflected in the Settlement Agreement (the "Agreement"), attached hereto as **Exhibit 1**;

2. Give preliminary approval of the Parties' settlement of the class action claims brought pursuant to Fed. R. Civ. P. 23(e), and approve the distribution of the Notice of Proposed Settlement of Class Action and Fairness Hearing ("Settlement Notice"), attached as Exhibit B to the Agreement;

3. Schedule a Fairness Hearing to take place approximately <u>45 days</u> after granting preliminary approval of the Parties' class action settlement;

4. Designate Robi J. Baishnab and Jeffrey J. Moyle of Nilges Draher LLC as Class Counsel, and preliminarily approve their request for attorneys' fees and costs; and,

5. Preliminarily Approve the service payment for Representative Plaintiff;

In support of this Motion, the Parties submit the attached memorandum and the following documents:

1

**Exhibit 1**: The Agreement, along with its Exhibit A (list of FLSA Collective Action Members), Exhibit B (Settlement Notice), and Exhibit C (list of Rule 23 Class Members);

**Exhibit 2**: Declaration of Robi J. Baishnab; and,

**Exhibit 3**: Proposed Order Granting Joint Motion for Final Approval of FLSA Settlement and Preliminary Approval of Rule 23 Class Action Settlement.

Respectfully Submitted,

| | |
|---|---|
| **NILGES DRAHER LLC** | **MARSHALL & MELHORN, LLC** |
| */s/Robi J. Baishnab* | */s/Roman Arce (with permission)* |
| Robi J. Baishnab (0086195) | Roman Arce (0059887) |
| Jeffrey J. Moyle (0084854) | Franceska Edinger (0100875) |
| 1360 E. 9th Street, Suite 808 | Four SeaGate, 8th Floor |
| Cleveland, OH 44114 | Toledo, OH 43604 |
| Telephone:(216) 230-2955 | Telephone: (419) 249-7100 |
| Fax:(330) 754-1430 | Facsimile: (419) 249-7151 |
| rbaishnab@ohlaborlaw.com | E-mail: arce@marshall-melhorn.com |
| jmoyle@ohlaborlaw.com | Email: scalzo@marshall-melhorn.com |
| | |
| Hans A. Nilges (0076017) | *Counsel for Defendant* |
| Shannon M. Draher (0074304) | |
| 7266 Portage Street N.W. | |
| Suite D | |
| Massillon, OH 44646 | |
| Telephone: (330) 470-4428 | |
| Fax: (330) 754-1430 | |
| hans@ohlaborlaw.com | |
| sdraher@ohlaborlaw.com | |
| | |
| *Counsel for Plaintiffs* | |

**MEMORANDUM IN SUPPORT**

**I.      Factual and Procedural Background**

On March 9, 2022, Representative Plaintiff filed this action asserting claims against Defendant Med1Care Ltd. on behalf of herself and others similarly situated under the Fair Labor Standards Act ("FLSA) and the Ohio overtime law, Ohio Rev. Code § 4111.03 (the "Action"). Specifically, Representative Plaintiff alleged the FLSA and Ohio law were violated for failure to pay job-to-job travel that occurred in the same workday, resulting in unpaid overtime during weeks in which 40 or more hours were worked. (Doc. 1).

On April 18, 2022, Representative Plaintiff filed an Amended Complaint, in which she added as co-named Defendants Med1Care Home Health LLC and Med1Care of Toledo LTD. (Doc. 8). On August 21, 2022, all named Defendants answered the Amended Complaint, denying all liability or wrongdoing in connection with all claims asserted in the Action. (Doc. 21).

On September 28, 2023, Representative Plaintiff filed a stipulated Second Amended Complaint, removing Defendants Med1Care Ltd. and Med1Care of Toledo LTD. (Doc. 36). By operation of the Second Amended Complaint and the Parties' Agreement, Defendants Med1Care Ltd. and Med1Care of Toledo LTD are considered dismissed with prejudice. (*See e.g.*, Agreement at ¶¶2; 41.a, h).

Relatively early in the litigation, the Parties exchanged information about their respective positions and engaged in informal discussions of whether settlement of this case would be feasible. In furtherance of those discussions, the Parties stipulated to conditional certification, and on July 20, 2022, the Court approved the Parties' Joint Stipulation of Conditional Certification of an FLSA Collective and Rule 23 Class defined as follows:

> All current and former Home Health Aides employed by Med1Care Home Health, LLC at any time from March 10, 2020 to April 30, 2022 who worked 40 hours or more during one

or more work weeks and who visited 2 or more patients in a single day in the course of their job duties.

(Doc. 20).

Notice was sent to **190** Potential Class Members, giving them an opportunity to opt into the FLSA collective, opt out of the Rule 23 Class, or do nothing and remain a member of the Rule 23 Class only. (*See e.g.*, Docs. 19-1, 20).[1] As outlined in the Agreement, there are **38** FLSA Collective Action Members, including Representative Plaintiff, who submitted Consent to Join forms that were filed with the Court. (Agreement at ¶6; Docs. 1, 5, 22-23, 25-26-29). The Settlement Notice will be sent to the Rule 23 Class Members, which are those who did not affirmatively opt-out of the Rule 23 class. (Agreement at ¶29).

After the close of the opt in/opt out period, Defendant's Counsel provided Plaintiffs' Counsel with time records and payroll data for the remaining Class and Collective Members so that each side could evaluate their respective positions and formulate settlement proposals based on the data. Plaintiffs' Counsel engaged a consultant (a Ph.D-level data scientist) to evaluate the records and create a mathematical damages model for the class, which Plaintiffs' Counsel shared with Defense Counsel, who used it to revise and formulate its own model, which was shared with Plaintiffs' Counsel. (Agreement at ¶8; Baishnab Dec. at ¶13). Both models served as a basis for negotiations and debate. (*Id.*)

After the Parties completed their review and analysis of the alleged damages at issue in this case, Plaintiffs' Counsel a made settlement demand, to which Defendant responded. After exchanging settlement proposals, the Parties were able to agree on terms of settlement, which are set forth in detail in the Agreement. (Baishnab Dec. at ¶14).

---

[1] One person excluded themselves pursuant to this initial notice and another person withdrew after previously opting in. (Doc. 34).

2

Settlement is fair, reasonable, and adequate, and in the best interests of the "Claimants", as defined in the Agreement. (Agreement at ¶10; Baishnab Dec. at ¶15). Prior to coming to agreement on the terms of settlement, Plaintiffs' Counsel spent a significant amount of time doing an expected value calculation, using decision tree software called TreeAge Pro$^©$. In this calculation, the Plaintiffs' Counsel analyzed each potential risk of loss (*i.e.*, whether collective/class treatment was obtainable, summary judgment, willfulness, good faith, and potential jury awards) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those values to the damages model. This exercise allowed Plaintiff to fully appreciate the entire risk picture of this case. The total settlement amount exceeds the expected value. Consequently, Plaintiffs' Counsel strongly believes that the settlement is fair, reasonable, and in the best interests of the class. (Baishnab Dec. at ¶15).

Settlement was reached through good faith, arms' length negotiations between Counsel who are experienced in wage and hour litigation, including collective and class actions and settlements. (Agreement at ¶10; Baishnab Dec. at ¶¶3-11, 16). Settlement resolves, and releases Defendant and the Released Parties from, all claims alleged in the litigation for the period from March 10, 2020 to April 30, 2022. (Agreement at ¶¶26-29).

Settlement resolves bona fide disputes that have existed throughout the litigation. (Agreement at ¶¶9-11; Baishnab Dec. at ¶17). For example, the Parties dispute whether any unpaid wages are owed; whether any overtime compensation is owed; whether there was any violation of the FLSA or Ohio law; whether liquidated damages under the FLSA are appropriate; whether a 2- or 3-year statute of limitations is applicable to the FLSA claims; and whether the Action could be successfully maintained as a collective and/or class action. (Agreement at ¶10; Baishnab Dec. at ¶17). Defendant has denied all liability throughout the litigation. (Doc. 21; Agreement at ¶34).

The Global Settlement Fund is **$97,125.00**, which will cover: (1) all Settlement Awards; (2) any Service Award approved for Representative Plaintiff; (3) all of Plaintiffs' Counsel's reasonable fees and costs approved by the Court; and (4) all of the Settlement Administrator's Costs. The Global Settlement Fund does not include required employer taxes with respect to any portions of the Settlement Awards and the Service Payment treated as wages under Internal Revenue Service Form W-2, which will be paid by Defendant. (Agreement at ¶20).

The settlement class consists of **120** current and former non-exempt hourly employees of Defendant who met the class definition and who did not opt out of the Rule 23 Class, excluding those with zero damages. (*Id.* at ¶29; Ex. C of Agreement). The Settlement Award for Rule 23 Class Members shall be each Rule 23 Class Member's *pro rata* share of the Net Settlement Fund based on the number of workweeks worked by the Rule 23 Class Member during the Release Period in comparison to the total number of workweeks worked by all Rule 23 Class Members during the Release Period. The Settlement Award for FLSA Collective Action members shall be calculated the same way as the Settlement Award for Rule 23 Class Members, but shall also be doubled, representing payment of liquidated damages under the Fair Labor Standards Act. (*Id.* at ¶32). In exchange for these payments, Class and Collective Members will release all any and all claims against Defendant under the FLSA and any and all applicable state and local overtime laws, regulations, and ordinances up to the Effective Date of the Settlement Agreement, which is the date that the Court enters its Final Approval Order. (*Id.* at ¶¶16. 26-28).

II.     **The Court should approve the FLSA Settlement.**

Settlement of claims made pursuant to § 216(b) of the FLSA are subject to approval by the Court. As explained below, Court approval is warranted.

4

### A. The Seven-Factor Standard is satisfied.

The court presiding over the settlement of an FLSA collective action may approve a proposed settlement if it "find[s] that the settlement is fair, reasonable, and adequate." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *5 (N.D. Ohio Mar. 26, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982)). Courts in the Sixth Circuit apply seven factors to evaluate collective action settlements:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). "While these factors are helpful in guiding the analysis, the 'fairness of each settlement turns in large part on the bona fides of the parties' legal dispute,' that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement." *Barnes*, 2019 U.S. Dist. LEXIS 65657 at *5. Application of these principles to this settlement demonstrates that approval is warranted.

#### 1. No indicia of fraud or collusion exists.

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation omitted). Here, the Agreement was achieved only after arms-length and good faith negotiations between the Parties, after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this case were to continue. (Baishnab Dec. at ¶¶13-16). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

5

> **2. The complexity, expense, and likely duration of continued litigation favor approval.**

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *See, Graybill v. Petta Enters., LLC*, No. 2:17-cv-418, 2018 U.S. Dist. LEXIS 164152, at *14 (S.D. Ohio Sep. 25, 2018) ("[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them") (citations omitted). Moreover, the Parties disagree over the merits of Plaintiff's claims, including whether any unpaid wages are owed; whether any overtime compensation is owed; whether there was any violation of the FLSA or Ohio law; whether liquidated damages under the FLSA are appropriate; whether a 2- or 3-year statute of limitations is applicable to the FLSA claims; and whether the Action could be successfully maintained as a collective and/or class action. (Agreement at ¶10; Baishnab Dec. at ¶17).

If forced to litigate this case further, the Parties would certainly engage in complex, costly, and protracted wrangling. The Settlement, on the other hand, provides substantial relief to the Settlement Class promptly and efficiently, and amplifies the benefits of that relief through the economies of class resolution. (Baishnab Dec. at ¶18).

> **3. Investigation was sufficient to allow the parties to act intelligently.**

The Parties engaged in substantial investigation prior to negotiating the Settlement. Prior to filing the Action, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant. After the case was filed, Plaintiff and Defendant engaged in numerous discussions regarding the merits of each side's respective positions. (*Id*. at ¶13). Thus, the legal and factual

issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

In addition, Defendant produced timekeeping and payroll records, and each Party engaged an expert to review and analyze those records. (*Id.*). Plaintiffs' Counsel also performed a detailed analysis of the risks and possible outcomes of this case and created a mathematical expected value to guide their settlement analysis. (*Id.* at ¶15). Consequently, not only were the factual and legal issues thoroughly investigated, but the potential damages in this case were also investigated as well.

### 4. The risks of litigation favor approval.

Counsel for both sides believe in the merits of their clients' positions, while also recognizing that continued litigation will be uncertain in terms of duration, cost, and result. Moreover, in the present case, Defendant raises defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well. Accordingly, if this case is not settled, it is possible that the Class would receive no compensation or, if they do receive compensation, it will be after protracted litigation, likely also involving appeals. By settling the case at this relatively early stage of the litigation, the Parties and Class Members bypass the inherent risks of litigation and achieve finality on this matter. (Baishnab Dec. at ¶18). This factor favors approval of the settlement.

### 5. Class Counsel and the Class Representative favor approval.

Class Counsel is highly experienced in wage-and-hour collective and class actions, has acted in good faith, and have represented their clients' best interests in reaching the Settlement. Class Counsel support the Settlement as fair and reasonable, and in the best interest of the class as a whole, as described in the Declaration of Robi J. Baishnab. "The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S.

7

Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018). Accordingly, this factor favors approval of the Settlement.

### 6. The Reaction of Absent Class Members

Class Counsel does not have any reason to believe that absent class members will have a negative reaction to the settlement of this case. (Baishnab Dec. at ¶19). However, if the Court approves the settlement, Class Members will receive notice of the settlement and be given the option to object if they believe that the settlement is not in their best interests. Accordingly, this factor does not necessarily weigh in favor of or against approval of the Agreement at this time but can be revisited prior to final approval of the Settlement.

### 7. The Public Interest

As the Sixth Circuit noted in another case involving the approval of an FLSA settlement, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899 (6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Here, rather than face the risk and uncertainty of continued litigation, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense of further litigation, and conserves judicial resources. Thus, the Court should find that this factor supports approval of the Settlement.

### B. The Settlement distributions are fair, reasonable, and adequate.

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court must "ensure that the distribution of the settlement proceeds is equitable." *Murton v. Measurecomp, LLC*, No. 1:07CV3127, 2009 U.S. Dist. LEXIS 144222, at *22 (N.D. Ohio Aug. 10, 2009). Here, all components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Plaintiff and the Class.

8

1.    **The Individual Payments Are Reasonable and Adequate**

The settlement compensates Class Members for alleged unpaid overtime wages on a proportional and equitable basis. (Agreement at ¶32). As such, each Class Member has the opportunity to obtain compensation for alleged unpaid wages that are proportional to the amount of time he or she was employed by Defendant within the period of time covered by the settlement.

Additionally, Judge Posner writing for a Seventh Circuit panel concluded that an EV calculation is the proper method for determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (explaining that, based on an EV calculation, a settlement of $7 million or more would be justified even where theoretical damages not accounting for compounded risk of loss could be up to $1 billion).

Here, the total settlement amount exceeds the calculated expected value. (Baishnab Dec. at ¶15). Therefore, this factor also weighs in favor of settlement approval.

2.    **Plaintiff's Service Award is proper and reasonable.**

The Settlement Agreement provides for a service award of **$2,500.00** to Representative Plaintiff, in addition to her individual payment. (Agreement at ¶¶33, 38). Courts routinely approve service awards to named plaintiffs in class and collective action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

Here, Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Plaintiffs' Counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. As such, the time and effort Plaintiff provided supports the requested service payment. (Baishnab Dec. at ¶20).

### 3. The Attorney Fees to Plaintiffs' Counsel are proper and reasonable.

After the Court has confirmed that the terms of settlement are fair to the Settlement Class, it may review the Parties' agreement as to the provision of fees and costs to Plaintiffs' Counsel. The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). In *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied*, 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir.1984)).

Here, Plaintiff is requesting that the Court approve as reasonable attorneys' fees of **$32,375.00**, representing one-third of the settlement fund. (Agreement at ¶¶20, 37). "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (N.D. Ohio July 27, 2018); *see also, Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018) ("One-third of the common fund is

10

a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'") (citation omitted).

This conclusion was reiterated in *Harsh v. Kalida Mfg.*, No. 3:18-cv-2239, 2021 U.S. Dist. LEXIS 175869, at *20 (N.D. Ohio Sep. 13, 2021). In *Harsh*, the Court held that while a Court can utilize either the percentage-of-the-fund or the Lodestar approach to determine whether an award of attorneys' fees is reasonable, the percentage-of-the-fund approach is more appropriate in class and collective actions, as it "rewards counsel for success and penalizes it for failure." *Id.* at *19-20. The Court further noted that the Lodestar method was more appropriate in wage and hour cases that "involve relatively small claims and therefore small amounts of damages in question," because "counsel for employees will inevitably be required to expend substantial resources and time, sometimes accruing fees several times greater than the value of damages in the case." *Id.* at *20. In contrast, in cases involving a common settlement fund the Court found that it "sees no compelling reason, let alone any reason, to deviate from" a request for one-third of the fund. *Id.*

Further, Plaintiffs' Counsel accepted this case on a contingent fee basis and advanced all litigation fees, costs and expenses. (Baishnab Dec. at ¶21). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); *see also, Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk").

11

Finally, Courts in this district acknowledge that "[w]age-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *16 (N.D. Ohio Mar. 26, 2019). Given the inherent complexity of a wage and hour collective action and the disputed issues of fact and law in this case, an award of one-third of the settlement fund appropriately compensates Plaintiffs' Counsel for their prosecution of this case and advances the public's interests in rewarding attorneys who bring wage and hour cases. *See, e.g., Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 U.S. Dist. LEXIS 67887, at *14 (S.D. Ohio June 24, 2011) ("society has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 4. The Court should authorize reimbursement to Plaintiffs' Counsel of their out-of-pocket expenses incurred in this case.

Plaintiffs' Counsel should also be reimbursed their out-of-pocket costs, which are approximately **$3,863.70**. Costs include, filing fee, service, damages model, and postage. (Baishnab Dec. at ¶22). "Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement." *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *20 (S.D. Ohio Nov. 25, 2019). In fact, "[e]xpense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Id.; see also, Harsh*, 2021 U.S. Dist. LEXIS 175869 at *23 ("Under the common fund doctrine, Class Counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs incurred in the prosecution of claims and in obtaining settlement").

### III. The Court should preliminarily approve the class action settlement.

The proposed Class Action Settlement of Class Members' Ohio state law claims is subject to approval by the Court pursuant to Fed. R. Civ. P. 23(e). As shown below, the Court's preliminary approval is warranted.

#### A. Preliminary approval of the settlement under Rule 23(b) is warranted.

##### 1. Certification of the Settlement Class is appropriate.

A proposed settlement class must satisfy the requirements of Rule 23. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997)). The proposed Class satisfies those requirements.

The proposed class meets Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511 (6th Cir.), *cert. denied*, 429 U.S. 870 (1976); *UAW v. General Motors Corp.,* 497 F.3d at 626. The Class, consisting of **120** members, is "so numerous that joinder of all members is impracticable." There is a common issue of law and fact presented by the Class Members' claim under Ohio law, *w*hether Defendant failed to pay Plaintiff and the Class Members for all hours worked in excess of 40 per workweek. Plaintiff is an adequate representative of the Class, in that she has common interests with other class members and she has vigorously prosecuted the interests of the class through qualified counsel. *Rutherford v. City of Cleveland*, 137 F.3d 905 (6th Cir. 1998).

The Class further satisfies Rule 23(b)(3)'s requirements of predominance and superiority. *Senter*, 532 F.2d at 522; *UAW v. General Motors Corp.,* 497 F.3d at 626. The unpaid overtime issues presented predominate over any individual questions. Class-wide resolution of this controversy is superior to the alternative of litigating dozens of individual lawsuits. *General Tel. Co. v. Falcon*, 457 U.S. 147, 159 (1982) (class certification advances "the efficiency and economy of litigation which is a principal purpose of the procedure"); *Day v. NLO*, 851 F. Supp. 869, 883

13

(S.D. Ohio 1994) (of equal importance "are considerations of the avoidance of the inequality resulting from piecemeal litigation as well as a concern to provide access to the courts for litigants with limited resources and common claims").

## 2. The Class Notice satisfies Rule 23 and Due Process.

Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound" by the settlement. *Bailey v. White*, 320 Fed. Appx. 364, 2009 WL 928595 (6th Cir. 2009). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)).

Reasonable notice to class members is required by due process as well. *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). Due process "does not, however, require *actual* notice to each party intended to be bound by the adjudication of a representative action." *Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008) (emphasis by the court) (citing *DeJulius,* 429 F.3d at 944 (citing *Mullane,* 339 U.S. at 313-14); *In re Integra Realty Res., Inc.,* 262 F.3d 1089, 1110-11 (10th Cir. 2001); *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir.1994))). The issue is not whether all class members received notice, "but whether the class as a whole had notice adequate to flush out whatever objections might reasonably be raised to the settlement." *Fidel*, 534 F.3d at 514 (quoting *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993)).

The "individual notice" requirement of Rule 23 and due process is fulfilled by sending written notice to class members by first-class mail at the addresses shown in the defendant's

14

business records. *Grunin v. International House of Pancakes* (8th Cir. 1975), 513 F.2d 114, 120, *cert. denied* (1975), 423 U.S. 864 (1975) (citing *Eisen*, 417 U.S. at 172-77). The Eighth Circuit noted that, in *Eisen*, "the Supreme Court specifically held that individualized notice by mail to the last known address was the 'best notice practicable' in a class action." *Grunin*, 513 F.2d at 121.

In the present case, the proposed notice to the Class Members satisfies these requirements. Under the terms of the Settlement Agreement and the proposed Preliminary Order, the notice will be sent to the Class Members by first-class mail using the addresses shown in Defendant's records. The notice also gives Class Members detailed information on how to object to the settlement. Accordingly, the Class Notice satisfies Rule 23 and due process requirements. (Agreement at ¶¶22, 44, 48-50).

### B. Approval of the Settlement under Rule 23(e) is warranted.

Under Rule 23(e), a class settlement must be "fair, reasonable, and adequate" under a seven-factor standard discussed below. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). Therefore, when considering the below factors, the courts apply a "strong presumption" in favor of finding a settlement to be fair. *Dail v. George A. Arab, Inc.,* 391 F. Supp. 2d 1142, 1145-46 (M.D. Fla. 2005) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). *Accord, Sweet v. General Tire & Rubber Co.*, 1982 WL 278, *5 (N.D. Ohio Mar. 17, 1982).

#### 1. The Seven-Factor Standard is satisfied.

The Sixth Circuit uses the same seven factors to evaluate class action settlements as it does to evaluate FLSA collective action settlements:

(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3. As discussed in detail above, the seven-factor standard supports approval of the Settlement.

On the basis of these factors, as well as all of the other factors discussed above, the Court should conclude that the Settlement is fair, reasonable, and adequate, and grant preliminary and later final approval under Rule 23(e).

## IV.    CONCLUSION

For the foregoing reasons, the Parties respectfully request that this Court enter the Proposed Order, attached to hereto as **Exhibit 3**:

1. Giving final approval of the Parties' settlement of the collective claims brought pursuant to the FLSA as reflected in the Settlement Agreement;

2. Giving preliminary approval of the Parties' settlement of the class action claims brought pursuant to Fed. R. Civ. P. 23(e), and approve the distribution of the Notice of Proposed Settlement of Class Action and Fairness Hearing;

3. Scheduling a Fairness Hearing to take place approximately 45 days after granting preliminary approval of the Parties' class action settlement;

4. Designating Robi J. Baishnab and Jeffrey J. Moyle of Nilges Draher LLC as Class Counsel, and preliminarily approving their request for attorneys' fees and costs; and

5. Preliminarily approving the service payment for Plaintiff Alona Brank;

Respectfully Submitted,

| **NILGES DRAHER LLC** | **MARSHALL & MELHORN, LLC** |
|---|---|
| */s/ Robi J. Baishnab* | */s/Roman Arce (with permission)* |
| Robi J. Baishnab (0086195) | Roman Arce (0059887) |
| Jeffrey J. Moyle (0084854) | Franceska Edinger (0100875) |
| 1360 E. 9th Street, Suite 808 | Four SeaGate, 8th Floor |
| Cleveland, OH 44114 | Toledo, OH 43604 |
| Telephone:(216) 230-2955 | Telephone: (419) 249-7100 |
| Fax:(330) 754-1430 | Facsimile: (419) 249-7151 |
| rbaishnab@ohlaborlaw.com | E-mail: arce@marshall-melhorn.com |
| jmoyle@ohlaborlaw.com | Email: scalzo@marshall-melhorn.com |
| | |
| Hans A. Nilges (0076017) | *Counsel for Defendant* |
| Shannon M. Draher (0074304) | |
| 7266 Portage Street N.W. | |
| Suite D | |
| Massillon, OH 44646 | |
| Telephone: (330) 470-4428 | |
| Fax: (330) 754-1430 | |
| hans@ohlaborlaw.com | |
| sdraher@ohlaborlaw.com | |

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

    I hereby certify that on September 29, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                         */s/ Robi J. Baishnab*
                                                         *Counsel for Plaintiffs*