## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **ALONA BRANK**, on behalf of herself and others similarly situated, | ) ) ) | Case No. 3:22-cv-00384 |
| Plaintiff, | ) ) | Judge Jack Zouhary |
| vs. | ) ) | **JOINT MOTION FOR FINAL** |
| **MED1CARE HOME HEALTH LLC**, | ) ) | **APPROVAL OF CLASS** **ACTION SETTLEMENT** |
| Defendant. | ) | |

## I.    INTRODUCTION

Pursuant to Fed. R. Civ. P. 23(e), Representative Plaintiff Alona Brank ("Representative Plaintiff") and Defendant Med1Care Home Health LLC ("Defendant") (collectively, the "Parties"), respectfully move the Court to grant final approval of the Parties' Class Action Settlement Agreement ("Agreement"), which was attached as Exhibit 1 to the Parties' September 29, 2023, Joint Motion for Final Approval of FLSA Settlement and Preliminary Approval of Rule 23 Class Action Settlement. (Docs. 37, 37-1).

As further detailed below and in the attached declarations from Class Counsel and 11 settlement participants, settlement reflects a fair, reasonable, and adequate resolution of a bona fide dispute. Defendant denies all liability and all material claims were highly contentious. Continued litigation would be costly and risky to all Parties. There was no guarantee the Class would enjoy any monetary remedy for the claims alleged.

As detailed below, Class Counsel implemented an objective and pragmatic approach to assessing whether and when the case should be settled. The approach is founded in soundly accepted science. All people, including plaintiffs and attorneys, have biases. They lack the natural ability to fully appreciate the real risks of litigation and often hold unfounded subjective

1

confidences in their respective legal positions, including the likely costs and potentially elusive rewards of litigation. By applying mathematical risk analysis to the settlement process, Class Counsel calculated the Expected Value ("EV") of the case prior to substantive settlement negotiations. Many people naturally think that litigation is either 50% one party wins or 50% loses. However, it is more complicated than that. There are multiple phases of cases, each with its own win/loss probability and risk. As explained below, the calculated EV estimates a mathematical accurate value of a settlement offer, considering all phases of litigation appropriately compounded. The total settlement amount exceeded the calculated EV, offering objective evidence that the settlement is fair, reasonable, and adequate. (*See* Baishnab Declaration at ¶¶5-23).

Notice of the proposed settlement was sent to the Class and the settlement is now ripe for final approval. Accordingly, for the reasons outlined below, the Parties respectfully request that after the Fairness Hearing scheduled for January 8, 2024, the Court enter the proposed Order and Judgment Entry attached as **Exhibit 1**:

1. Granting final approval of the Parties' Settlement Agreement, including the Global Settlement Amount of **$97,125.00**;

2. Granting final approval of a payment to Class Counsel of **$32,375.00** in attorney's fees (representing one-third of the Global Settlement Amount) and **$3,863.70** in litigation expenses;

3. Granting final approval of the **$2,500.00** Service Award to Representative Plaintiff;

4. Retaining jurisdiction over performance of settlement, and,

5. Dismissing this case with prejudice.

## II.   FACTUAL AND RELEVANT PROCEDURAL HISTORY

### A.  Procedural History.

On March 9, 2022, Representative Plaintiff filed this action asserting claims against Defendant Med1Care Ltd. on behalf of herself and others similarly situated under the Fair Labor

Standards Act ("FLSA) and the Ohio overtime law, Ohio Rev. Code § 4111.03 (the "Action"). Specifically, Representative Plaintiff alleged the FLSA and Ohio law were violated for failure to pay job-to-job travel that occurred in the same workday, resulting in unpaid overtime during weeks in which 40 or more hours were worked. (Doc. 1).

On April 18, 2022, Representative Plaintiff filed an Amended Complaint, in which she added as co-named Defendants Med1Care Home Health LLC and Med1Care of Toledo LTD. (Doc. 8). On August 21, 2022, all named Defendants answered the Amended Complaint, denying all liability or wrongdoing in connection with all claims asserted in the Action. (Doc. 21).

Relatively early in the litigation, the Parties exchanged information about their respective positions and engaged in informal discussions of whether settlement of this case would be feasible. In furtherance of those discussions, the Parties stipulated to conditional certification, and on July 20, 2022, the Court approved the Parties' Joint Stipulation of Conditional Certification of an FLSA Collective[1] and Rule 23 Class defined as follows:

> All current and former Home Health Aides employed by Med1Care Home Health, LLC at any time from March 10, 2020 to April 30, 2022 who worked 40 hours or more during one or more work weeks and who visited 2 or more patients in a single day in the course of their job duties.

(Doc. 20).

Notice was sent to **190** Potential Class Members, giving them an opportunity to opt into the FLSA collective, opt out of the Rule 23 Class, or do nothing and remain a member of the Rule 23 Class only. (*See e.g.*, Docs. 19-1, 20).[2] As outlined in the Agreement, there are **38** FLSA Collective Action Members, including Representative Plaintiff, who submitted Consent to Join

---

[1] This predated *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023).

[2] One person excluded themselves pursuant to this initial notice and another person withdrew after previously opting in. (Doc. 34).

forms that were filed with the Court. (Agreement at ¶6; Docs. 1, 5, 22-23, 25-26-29). The Settlement Notice will be sent to the Rule 23 Class Members, which are those who did not affirmatively opt-out of the Rule 23 class. (Agreement at ¶29).

After the close of the initial opt in/opt out period, Defendant's Counsel provided Class Counsel with time records and payroll data for the remaining Class and Collective Members so that each side could evaluate their respective positions and formulate settlement proposals based on the data. Class Counsel engaged a consultant (a Ph.D-level data scientist) to evaluate the records and create a damages model for the class, which Class Counsel shared with Defense Counsel, who used it to revise and formulate their own model, which was shared with Class Counsel. Both models served as a basis for negotiations and debate. (Agreement at ¶8; Baishnab Dec. at ¶3).

After the Parties completed their review and analysis of the alleged damages at issue in this case, Representative Plaintiff made a settlement demand, to which Defendant responded. After exchanging settlement proposals, the Parties were able to agree on terms of settlement, which are set forth in detail in the Agreement. (Baishnab Dec. at ¶4).

On September 28, 2023, Representative Plaintiff filed a stipulated Second Amended Complaint, removing Defendants Med1Care Ltd. and Med1Care of Toledo LTD. (Doc. 36). By operation of the Second Amended Complaint and the Parties' Agreement, Defendants Med1Care Ltd. and Med1Care of Toledo LTD are considered dismissed with prejudice. (*See e.g.*, Agreement at ¶¶2; 41.a, h). On September 29, 2023, Defendant filed its Answer to the stipulated Second Amended Complaint, continuing to deny all liability. (Doc. 38).

On October 3, 2023, the Court granted the Parties' Joint Motion for Final Approval of FLSA Settlement and Preliminary Approval of Rule 23 Class Action Settlement. (Doc. 39).

**B.  Settlement is fair, reasonable, and adequate.**

The Parties agree that the settlement is fair, reasonable, and adequate, and in the best interests of the Class. (Agreement at ¶10; Baishnab Dec. at ¶5). Prior to coming to agreement on the terms of settlement, Class Counsel spent a significant amount of time doing an expected value calculation, using decision tree software called TreeAge Pro©. Class Counsel's empirical approach to settlement helps ensure a settlement that is "fair, reasonable, and adequate." (Baishnab Dec. at ¶¶5-24). Specifically, legal scholarship has observed that it is often the case that "both plaintiffs and defendants frequently reject settlement proposals that would have been financially advantageous." Likewise, many cases settle for an inappropriate amount. (*Id.* at ¶6).

To avoid making poor settlement decisions, Class Counsel's systematic approach ensures settlements that are grounded in empirical research and designed to achieve the maximum utility of a lawsuit. Class Counsel's approach is also specifically designed to avoid various decision-making biases that could result in the rejection of a favorable settlement or result in one that is disadvantageous to their clients. (*Id.* at ¶7).

One such bias is the "subadditivity effect," which is the tendency of people to judge the probabilities of the whole to be less than the probabilities of the parts. For example, in one study, attorneys were asked to calculate probabilities of being awarded four different ranges of damages. The collective probabilities summed to 170%. (*Id.* at ¶8).

Class Counsel's experience demonstrates that attorneys often conclude that a case has an estimated 50% chance of winning each of three different issues in the litigation as a "50/50" case. But it is not. Rather, there is only a 12.5% chance when the probabilities of all three issues are compounded (*i.e.*, $0.5 \times 0.5 \times .5 = 0.125$). (*Id.* at ¶9). Other biases include the self-serving bias, which causes litigants to overestimate the chances that an objective third party (i.e., the Court or a

jury) will favor their perspective. Overoptimism and overconfidence biases also tend to result in poor predictions. (*Id*. at ¶10).

These cognitive biases affect all individuals to some degree, and they are particularly unhelpful in analyzing the reasonableness of a settlement. (*Id*. at ¶11). To mitigate these biases, Class Counsel performs an EV calculation for nearly all cases, which can be generalized as the anticipated value of a case at some point in the future after various uncertain events have occurred. (*Id*. at ¶12, *citing Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (explaining an EV calculation and holding that a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial….").

The EV calculation was done before Class Counsel engaged in any significant settlement discussion. Class Counsel calculated the EV by summing the product of the probabilities of winning at each stage of the litigation and the expected outcome of success and the product of the probabilities of losing at each stage and zero, that is, EV = (probability of win X expected damages) + (probability of loss X $0) - Costs. (Baishnab Dec. at ¶13).

A decision tree was created with various Decision and Chance (i.e., probability) nodes at each stage of the case that has a win/loss potential. At the end of each "branch" in the tree is a Payoff node, which is the sum of the probabilities multiplied by damages for the branch. The probabilities and values of the entire case are then summed, resulting in a final EV. (*Id*. at ¶14).

Typically, both potential damages and win/loss probabilities are determined through a collaborative process involving attorneys familiar with the case through participation in review of documents, interaction and interviews with the clients, and/or knowledge of relevant case law. All participating attorneys also have significant experience with state and federal wage and hour collective and class action litigation, generally. Therefore, damages and probabilities are typically

determined by a combination of averaging attorney estimates and/or consensus opinion. Empirical research establishes that a collaborative process like this results in more reliable predictions of case value than a single attorney's experience and intuition. (*Id*. at ¶15).

Here, multiple Decision nodes were identified, each with corresponding Chance and Payoff nodes, such as: (1) collective/class or individual treatment; (2) results of summary judgment; (3) results of a jury trial; (4) a determination regarding willfulness; and (5) a determination regarding liquidated damages. Considerations also included "high," "mid," and "low" win rates. Settlement analysis, therefore, used both the damages model and node chance percentages in determining the EV for this case. (*Id*. at ¶16).

In this calculation, the Class Counsel analyzed each potential risk of loss (*i.e*., whether collective/class treatment was obtainable, summary judgment, willfulness, good faith, and potential jury awards) and assigned a probability value to each potential risk. The decision tree software compounded each of these probability values and applied those values to the damages model. This exercise allowed Class Counsel to fully appreciate the entire risk picture of this case. (*Id*. at ¶17). The actual calculated EV can be submitted to the Court for in camera review, if the Court so directs. But generally, Class Counsel represents the following:

- Each node/stage reflects a future point in time, where Representative Plaintiff cannot reach without going through weeks, months, and possibly years, plus thousands of dollars of discovery. Discovery would include written discovery, document production, and depositions. Expert time studies can cost upwards of $30,000-$50,000, if not more, depending on the number of studies needed and locations analyzed. (*Id*. at ¶18).

- The chances of winning or losing is more than just 50% one party wins or loses. Rather, the probabilities need to be compounded. Each node has a potential for winning and

losing. For Representative Plaintiff to achieve the maxim estimated damages, she would need to win at every single stage, or node of risk of loss. It would be akin to having to roll six sixes with six dice in one roll. (*Id*. at ¶19).

- If Representative Plaintiff lost on collective/class treatment, she could only proceed individually. If she did not survive summary judgment or at trial, the value of the case would essentially be zero. If Representative Plaintiff could not prove willfulness, then FLSA damages would be limited to only two years. If Defendant successfully established good faith, then damages may not be liquidated. While these damages are related to the FLSA settlement portion of this case, it affects the Parties' strategic positions as a whole, including Rule 23 class settlement. (*Id*. at ¶20).

- And, even if Representative Plaintiff won at trial, the yet-to-be-identified jury would need to be persuaded as to the amount of work alleged to be unpaid and the level of damages awarded, reflected by the probabilities at the terminal nodes of "high", "mid", and "low" damages. (*Id*. at ¶21).

- After compounding probability, Class Counsel calculated only a 20% chance of successfully prevailing collective/class treatment, summary judgment, trial, and willfulness, and only a 14% chance of obtaining the maximum alleged damages. (*Id*. at ¶22).

Here, the total settlement amount exceeds the expected value. Consequently, Class Counsel strongly believes that the settlement is fair, reasonable, and in the best interests of the Class. (*Id*. at ¶23).

Settlement was reached through good faith, arms' length negotiations between Counsel who are experienced in wage and hour litigation, including collective and class actions and

settlements. (Agreement at ¶10; Baishnab Dec. at ¶24). Settlement resolves bona fide disputes that have existed throughout the litigation. (Agreement at ¶¶9-11; Baishnab Dec. at ¶24). Defendant has denied all liability throughout the litigation. (Docs. 21, 38; Agreement at ¶34).

C. <u>Summary of the recent Rule 23 notice period</u>.

On August 16, 2023, the Court granted the Parties' Joint Motion for Preliminary Approval of Rule 23 Class Action Settlement. (Doc. 61).[3] The Parties engaged Analytics Consulting LLC as the Settlement Administrator ("Analytics" or the "Settlement Administrator"). (*See* declaration of Jeffrey J. Mitchell ("Mitchell Dec.") attached as **Exhibit 3**, at ¶5). Defendant provided the Settlement Administrator Class names and last-known mailing addresses. (*Id.* at ¶6). Analytics imported the Class Data to a project-specific database and processed the records through the US Postal Service's National Change of Address (NCOA) database to standardize and update the mailing addresses. (*Id.* at ¶7).

On November 1, 2023, Analytics sent by first-class mail the Court-approved "Notice of Proposed Settlement of Class Action and Fairness Hearing" to the **120** Class Members. (*Id.* at ¶8). To date, 23 Notices were returned to Analytics by the U.S. Postal Service without a forwarding address. Analytics conducted an address trace in an attempt to ascertain a valid address for the affected Class Members. As a result of these efforts, 6 new addresses were identified for Class Members. Analytics subsequently updated the addresses and processed a re-mail of the Notice to each of the affected Class Members. (*Id.* at ¶9).

The Notice gave Class Members until December 1, 2023, to object to or opt out of the settlement. No Class Member has filed any objection to the settlement and no Class Member opted

---

[3] At the same time, the Court approved the FLSA portion of the Parties' settlement.

out of the settlement. (*Id.* at ¶10). Having completed the notice process, the Parties now move the Court for final approval of Class Action settlement claims pursuant to Fed. R. Civ. P. 23(e).

### III.  LAW AND ANALYSIS

**A.  The standard for final approval of a class action has been met.**

A class action settlement may be approved if a Court finds it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a class action settlement is fair, reasonable, and adequate, Courts consider: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir.1992). Application of these principles to this Settlement demonstrates that approval is warranted.

**1.  No indicia of fraud or collusion exists.**

There is no indicia of fraud or collusion, and "[c]ourts presume the absence of fraud or collusion unless there is evidence to the contrary." *White v. Premier Pallet & Recycling, Inc.*, No. 5:18-cv-1460, 2018 U.S. Dist. LEXIS 174414, at *4 (N.D. Ohio Oct. 10, 2018) (citation omitted). Here, the Agreement was achieved only after arms-length and good faith negotiations between the Parties, after each Party had the opportunity to evaluate Defendant's time and payroll data to determine the potential damages at issue if this case were to continue. (Baishnab Dec. at ¶¶3-4, 24). As such, there is no indicia of fraud or collusion, and this factor favors approval of the settlement.

## 2. The complexity, expense, and likely duration of continued litigation favor approval.

The policy favoring the settlement of collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. *Brent v. Midland Funding, LLC,* No. 3:11 CV 1332, 2011 U.S. Dist. LEXIS 98763, at *43 (N.D. Ohio Sep. 1, 2011) (Aug. 17, 2018) ("Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them.") (further citation omitted). Additionally, the Parties continue to disagree over the merits of Representative Plaintiff' class claims, including: whether Defendant failed to pay the Class for all time worked; whether any Class Members are entitled to any overtime compensation, and if so, how much; and whether the case could proceed as a class. (Doc. 37-2 at ¶17).

Proving Representative Plaintiff's claims would have been costly and uncertain. Representative Plaintiff alleged that Defendant did not properly compensate the Class for traveling from one job site to the next within the same workday, which resulted in unpaid overtime. (Doc. 36). With the Class members working in multiple locations, establishing Rule 23's requirement of requirements of numerosity, commonality, typicality, adequacy of representation, predominance, and superiority, would require complex, costly, and protracted litigation and discovery, including written discovery, document production, and depositions. Further, expert time studies could cost upwards of $30,000-$50,000, or more depending on the complexity and areas studied. (Baishnab Dec. at ¶18).

Litigation is inherently uncertain, and the final outcome could result in no recovery for the Class at all. Settlement, on the other hand, provides immediate and substantial relief to the class

11

promptly and efficiently and amplifies the benefits of that relief through the economies of collective and class resolution. (Doc. 37-2 at ¶18).

### 3. The amount of the Parties' discovery favors settlement approval.

The Parties engaged in substantial investigation prior to negotiating the Settlement. Prior to filing the Action, Class Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate complaint for the Court and Defendant. After the case was filed, Plaintiff and Defendant engaged in numerous discussions regarding the merits of each side's respective positions. (Baishnab Dec. at ¶¶3-4; Doc. 37-2 at ¶13). Thus, the legal and factual issues in the case were thoroughly researched by counsel for the Parties, and all aspects of the dispute are well-understood by both sides.

In addition, Defendant produced timekeeping and payroll records, and each Party engaged an expert to review and analyze those records. (Baishnab Dec. at ¶¶3-4). Class Counsel also performed a detailed analysis of the risks and possible outcomes of this case and created a mathematical expected value to guide their settlement analysis. (Baishnab Dec. at ¶¶4-23). Consequently, not only were the factual and legal issues thoroughly investigated, but the potential damages in this case were also investigated as well. (*Id*. at ¶4).

### 4. The likelihood of success on the merits supports settlement approval.

The total settlement amount exceeds the calculated expected value. (*Id*. at ¶23)[4] Judge Posner, writing for a Seventh Circuit panel, concluded that an EV is the proper method for determining the fairness of a class settlement: "A settlement is fair to the plaintiffs in a substantive sense…if it gives them the expected value of their claim if it went to trial…." *Mars Steel Corp.*, 834 F.2d at 682 (explaining an EV calculation where a settlement of $7 million or more would be

---

[4] The actual calculated expected value can be submitted to the Court for in camera review, if the Court so directs.

justified even where theoretical damages not accounting for compounded risk of loss could be up to $1 billion). *See also*, *Siddiky v. Union Square Hosp. Grp.*, 2017 U.S. Dist. LEXIS 75301, at *16 (S.D.N.Y. May 17, 2017); *Anderson v. Torrington Co.*, 755 F. Supp. 834, 838 (N.D. Ind. 1991); *Chase v. Viaquest Residential Servs.*, S.D. Ohio No. 22-cv-1974, 2023 U.S. Dist. LEXIS 41416, at *3-4 (Mar. 10, 2023); *Cheikh Fassa, ex rel. Himself & Others Similarly Situated v. Express Inc.*, S.D. Ohio No. 2:21-c:22-cv-v-542, 2022 U.S. Dist. LEXIS 73599, at *4 (Apr. 5, 2022); *Johnson v. Centor, Inc.*, No. 5:19-cv-2622, 2021 U.S. Dist. LEXIS 213003, at *3 (N.D. Ohio Nov. 4, 2021).

Additionally, and as outlined above, Class Counsel calculated a compounded probability of only a 20% chance of successfully prevailing across all issues of collective/class treatment, summary judgment, trial, and willfulness, and only a 14% chance of obtaining the maximum alleged damages. (Baishnab Dec. at ¶22). Accordingly, the likelihood of success on the merits supports settlement approval demonstrated by the fact that settlement amount exceeds the calculated EV.

### 5.    Class Counsel and the Class Representative favor approval.

"The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference." *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 U.S. Dist. LEXIS 140019, at *11 (S.D. Ohio Aug. 17, 2018) (further citation omitted). Class Counsel is highly experienced in wage-and-hour collective and class actions, has acted in good faith, and has represented the Class's best interests in reaching the settlement. Class Counsel supports the settlement as "fair, reasonable, and adequate", and in the best interest of the Class as a whole. (Baishnab Dec. at ¶¶5, 23). Class Counsel has thoroughly discussed the settlement with the Representative Plaintiff, who likewise agrees that the settlement is fair, reasonable, and in the best interests of the Class she represents. (*Id.* at ¶23).

6.      **The reaction of absent Class Members favors approval.**

The settlement notice process satisfied due process. *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund,* 429 F.3d 935, 943-44 (10th Cir.2005) (citing *Mullane,* 339 U.S. at 313; *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974)).

As explained by the Settlement Administrator, before notice issued Class Member addresses that were provided by Defendant were processed through the US Postal Service's National Change of Address (NCOA) database to standardize and update the mailing addresses. (Mitchell Dec. at ¶¶8-9). Notice issued by first-class mail to the **120** Class Members. (*Id.* at ¶8). To date, 23 Notices were returned to Analytics by the U.S. Postal Service without a forwarding address. Analytics conducted an address trace in an attempt to ascertain a valid address for the affected Class Members. As a result of these efforts, 6 new addresses were identified for Class Members. Analytics subsequently updated the addresses and processed a re-mail of the Notice to each of the affected Class Members. (*Id.* at ¶9). No Class Member has filed any objection to the settlement and no individual opted out of the settlement. (*Id.* at ¶10).

Further, Representative Plaintiff obtained 11 declarations from settlement participants, who testify that that they believe that the settlement is fair and equitable for the Class, that they are happy with the amount of their settlement awards which greatly benefit them and their families, and that they urge the Court to approve the settlement. (**Exhibit 4**). According, this factor favors settlement approval.

7.      **Public interest favors settlement approval.**

As the Sixth Circuit noted, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 899

(6th Cir. 2019) (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). Here, rather than face the risk and uncertainty of continued litigation, the settlement confers immediate benefits on the Class, avoids the risks and expense of further litigation, and conserves judicial resources. Additionally, court approval demonstrates that employees and employers can resolve differences amicably through the courts. Thus, the Court should find that this factor supports approval of the Settlement.

**B.      The Court should approve the Service Award for Representative Plaintiff.**

As outlined in the Parties' preliminary approval motion, the Agreement provides Service Award for the Representative Plaintiff in the amount of **$2,500.00**. (Agreement at ¶¶33, 38). Courts routinely approve service awards to named plaintiffs in class action litigation, because service awards "are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003). Service awards are meant to "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *17 (N.D. Ohio Mar. 8, 2010).

Here, Representative Plaintiff contributed significant time, effort, and detailed factual information enabling Class Counsel to evaluate the strength of this case, and reach a settlement of this matter that, in Counsel's opinion, fairly and adequately compensates the class for alleged unpaid wages. As such, the time and effort Plaintiff provided supports the requested service payment. (Doc. 37-2 at ¶20).

C.      **The Court should approve the payment of Attorneys' Fees and Costs to Class Counsel.**

For the reasons set forth in the Joint Motion for Preliminary Approval, the Court should also grant final approval of a payment to Class Counsel of **$32,375.00** in attorney's fees (representing one-third of the Global Settlement Amount) and **$3,863.70** in litigation costs. As noted in the Joint Motion for Preliminary Approval, one-third fees are common in wage & hour collective/class actions. *Carr v. Bob Evans Farms*, No. 1:17-CV-1875, 2018 U.S. Dist. LEXIS 228221, at *10-11 (N.D. Ohio July 27, 2018); *see also, Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018).

Class Counsel accepted this case on a contingent fee basis and advanced all litigation fees and costs. (Doc. 37-2 at ¶21). "In doing so, Class Counsel assumed a real risk in taking on this case, preparing to invest time, effort, and money over a period of years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award." *Ganci v. MBF Insp. Servs.*, No. 2:15-cv-2959, 2019 U.S. Dist. LEXIS 207645, at *19 (S.D. Ohio Dec. 3, 2019); *see also Barnes v. Winking Lizard, Inc.*, No. 1:18CV952, 2019 U.S. Dist. LEXIS 65657, at *15 (N.D. Ohio Mar. 26, 2019) ("Class Counsel provided representation on a purely contingency fee basis, advancing all litigation costs and receiving no payment unless [and] until there was a recovery, and should be compensated for that risk.").

Indeed, as outlined in the attached declarations, 11 Class Members testified that they understand that Class Counsel took this case on a contingent basis, recognizing the risks of receiving no compensation and losing all incurred expenses if a favorable result was not achieved for the Class. (**Ex. 4** at ¶4). Accordingly, the Parties respectfully requests that the Court find that attorneys' fees in the amount of one-third of the settlement fund is reasonable in this case and approve the reimbursement of costs.

IV.  **CONCLUSION**

For the foregoing reasons, the Parties respectfully request that the Court enter the Proposed

Order, attached as **Exhibit 1**:

1.  Granting final approval of the Parties' Settlement Agreement, including the Global Settlement Amount of **$97,125.00**;

2.  Granting final approval of a payment to Class Counsel of **$32,375.00** in attorney's fees (representing one-third of the Total Settlement Amount) and **$3,863.70** in litigation expenses;

3.  Granting final approval of the **$2,500.00** Service Award to Representative Plaintiff;

4.  Retaining jurisdiction over performance of settlement, and,

5.  Dismissing this case with prejudice.

Respectfully Submitted,

**NILGES DRAHER LLC**                         **MARSHALL & MELHORN, LLC**

*/s/Robi J. Baishnab*                         */s/Roman Arce (with permission)*
Robi J. Baishnab (0086195)                    Roman Arce (0059887)
Jeffrey J. Moyle (0084854)                    Franceska Edinger (0100875)
1360 E. 9th Street, Suite 808                 Four SeaGate, 8th Floor
Cleveland, OH 44114                           Toledo, OH 43604
Telephone:(216) 230-2955                      Telephone: (419) 249-7100
Fax:(330) 754-1430                            Facsimile: (419) 249-7151
rbaishnab@ohlaborlaw.com                      E-mail: arce@marshall-melhorn.com
jmoyle@ohlaborlaw.com                         Email: scalzo@marshall-melhorn.com

Hans A. Nilges (0076017)                      *Counsel for Defendant*
Shannon M. Draher (0074304)
7034 Braucher Street NW
Suite B
North Canton, OH 44720
Telephone: (330) 470-4428
Fax: (330) 754-1430
hans@ohlaborlaw.com
sdraher@ohlaborlaw.com

*Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Robi J. Baishnab*
*Counsel for the Class*